E. GRADY JOLLY, specially
concurring:
In determining the contours of constitutionally permissible school discipline, older cases are relevant for block building, but only block building, as we decide what speech schools may discipline under the First Amendment. In Tinker, there was no threat to kill a teacher, no threat of violence, and no lewd or slanderous comments regarding a teacher. Tinker also did not address the intersection between on-campus speech and off-campus speech. When Tinker refers to a disruption, it is saying that student ideas may be expressed on campus unless they are so controversial that the expression creates a disruption. Those principles are controlling where the facts fit, but Tinker’s admonitions — or the admonitions in various precedents — are not equally forceful in every case. The same can be said of Morse. It is perhaps more applicable here than Tinker, because it speaks in terms of physical and moral danger to students. Morse makes clear that such danger does not require proof of disruptive effects that the speech may cause, as would be required in the case of mere expression of non-lethal statements.
It is true that in a footnote in Ponce we indicated that individual threats of violence are more appropriately analyzed in the light of Tinker as opposed to threats of mass violence, which we analyzed under Morse. These are evolving principles, however, and we now have before us a different case from Tinker, Morse, Ponce, or Porter. Tinker may well be a relevant *401 precedent here. But that does not mean that all aspects of a political speech case must be slavishly applied to a case of threats to kill teachers.
We should apply reasonable common sense in deciding these continually arising school speech and discipline cases, as we would in any case dealing with the evolving common law, which takes into account the technological and societal environs of the times. When Tinker was written in 1969, the use of the Internet as a medium for student speech was not within the Court’s mind. It is also true that this issue was not in the forefront of the Court’s mind when Porter was written in 2004, or even when Morse and Ponce were written. Ever since Morse, the use, the extent and the effect of the online speech seem to have multiplied geometrically.
Judges should also view student speech in the further context of public education today — at a time when many schools suffer from poor performance, when disciplinary problems are at their highest, and when schools are, in many ways, at their most ineffective point. Judges should take into account the effect the courts have had on these problems in school discipline. Increasing judicial oversight of schools has created unforeseen consequences, for teachers and for schools as much as for students. Students feel constraints on conduct and personal speech to be more and more permissive. Teachers will decide not to discipline students, given the likelihood of protracted litigation and its pressures on the time and person of those who work hard to keep up with the increasing demands placed on them as teachers. Schools will not take on the risk of huge litigation costs when they could use these resources on school lunches, textbooks, or other necessary school resources to educate children, all of which are sorely lacking in so many, many instances.
Judges can help to address these concerns by speaking clearly, succinctly and unequivocally. I would decide this case in the simplest way, consonant with our cases and the cases in other circuits, by saying as little as possible and holding:
Student speech is unprotected by the First Amendment and is subject to school discipline when that speech contains an actual threat to kill or physically harm personnel and/or students of the school; which actual threat is connected to the school environment; and which actual threat is communicated to the school, or its students, or its personnel.
With these comments, I join Judge Barksdale’s opinion.